1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                   NORTHERN DISTRICT OF CALIFORNIA

7

8  CONOCOPHILLIPS COMPANY, a      )
   Delaware corporation,         )
9                                )    No. C10-00624 BZ
               Plaintiff(s),     )
10                               )    **REPORT AND RECOMMENDATION ON**
       v.                        )    **PLAINTIFF'S MOTION FOR ENTRY**
11                               )    **OF DEFAULT JUDGMENT AND**
   INTERNATIONAL MARINE FUELS    )    **AWARD OF ATTORNEYS' FEES AND**
12 GROUP, INC., a California      )    **COSTS**
   corporation, and ROBERT       )
13 FALCHE, an individual and      )
   personal guarantor,           )
14                               )
               Defendant(s).     )
15 _____ )

16      Plaintiff ConocoPhillips Company applies for entry of

17 default judgment, joint and severally, against defendants

18 International Marine Fuels Group, Inc. ("International

19 Marine") and International Marine's President, Robert Falche,

20 for breach of contract. Defendants have not answered

21 plaintiff's complaint, appeared in this action, or responded

22 to plaintiff's application for default judgment.  In addition,

23 defendants have not consented to my jurisdiction pursuant to

24 28 U.S.C. § 636(c).  This matter will therefore be reassigned

25 to a District Judge with the following report and

26 recommendation.

27      On May 20, 2010, plaintiff filed its first amended

28 complaint ("FAC") to enforce a promissory note, personal

                              1

1   guarantee, and other obligations related to the sale of fuel

2   products to the defendants. Docket No. 7.  Plaintiff alleges

3   that it has supplied International Marine with fuel on credit,

4   under the terms agreed upon by the parties in the Unbranded

5   Open Rack Sales General Terms & Conditions ("Rack Terms and

6   Conditions"), and has performed all terms, covenants, and

7   conditions required of it. FAC Exh. A; FAC ¶ 38.  It also

8   alleges that Falche executed and delivered a personal

9   guarantee in which he guaranteed International Marine's

10  obligations under the Rack Terms and Conditions and, in the

11  event of default, the cost of collections and attorneys' fees.

12  FAC ¶ 38; FAC Exh. B.

13      Plaintiff alleges that defendants failed to make numerous

14  payments in 2008 and 2009 and defaulted on their debt. FAC ¶

15  13.  By May 2009, this debt had accumulated to approximately

16  $747,316.33. FAC ¶ 14.  In response, International Marine

17  executed and delivered a $747,316.33 promissory note to

18  plaintiff. FAC ¶ 15.  The note stated, in part, that full

19  payment of the principal balance was due on August 31, 2009.

20  FAC ¶ 16; FAC Exh. C at § 1-2.  It further stated that upon

21  any "event of default,"[1] International Marine would owe

22  interest accruing from the date of default and that the entire

23  amount of principal and interest would become due and payable

24  immediately. FAC ¶¶ 17, 18; FAC Exh. C at § 6-7.  The

25  _____

26      [1]    The promissory note recognizes several scenarios that
    might qualify as "events of default." This agreement went into
27  default under § 7(F) of the promissory note which states,
    "Promissor fails to make full and final payment of the amount
28  then due and payable upon Maturity Date of this note …" FAC
    Exh. C at § 7(F).

1   promissory note provided for reimbursement "on demand for all

2   legal fees and other costs and expenses including … legal

3   fees, court costs, and collection agency charges incurred in

4   the collection or enforcement of [the promissory note]." FAC ¶

5   19; FAC Exh. C at § 7.

6       Plaintiff's complaint asserts that by August 31, 2009

7   defendants had not made any payments on the promissory note or

8   pursuant to the personal guarantee. FAC ¶ 20.  Falche had

9   personally guaranteed all debts incurred to plaintiff by

10  International Marine under the Rack Terms and Conditions. FAC

11  Exh. B.  After a "Final Demand Letter & Personal Guaranty

12  Notice" was sent to defendants on September 2, 2009,

13  International Marine made two payments of $5,000 each. FAC ¶¶

14  23, 24.  Plaintiff contends that defendants have made no

15  further payments. FAC ¶ 25.

16      In addition, plaintiff alleges that defendants have an

17  additional obligation to pay $38,254.27 for three fuel

18  shipments made in 2006 and 2007 but not invoiced at those

19  times.[2] FAC ¶ 27; FAC Exh. F.  These unpaid shipments were

20  discovered subsequent to defendants' default on the promissory

21  note. FAC ¶ 27.  Consequently, they were not included in the

22  principal stated in the promissory note. FAC ¶ 28.

23      Plaintiff commenced this action for breach of contract

24  and served defendants in February 2010. Docket Nos. 1, 4, 5.

25  Neither defendant answered the complaint.  In May 2010,

26

27      [2]   The uninvoiced amounts were: (1) $21,796.85 for a
    June 15, 2007 shipment; (2) $14,063.97 for a September 2, 2006
28  shipment; and (3) $2,393.45 for a July 14, 2006 shipment.

plaintiff filed a first amended complaint and served defendants with its amended pleading. Docket Nos. 7, 10, 11. Again, neither defendant filed an answer and neither have appeared in the case. The clerk, therefore, entered default against Falche and International Marine. Docket Nos. 14, 17.

Pursuant to Rule 55(b)(2), the Court may enter a default judgment against a party against whom default has been entered.  The decision to grant or deny a default judgment under Rule 55(b) is within the discretion of the Court. Shanghai Automation Instrument Co. Ltd. v. Kuei, 194 F.Supp.2d 995, 999 (N.D. Cal. 2001).  Although a formal hearing is not required for a court to render a default judgment, plaintiffs have the burden of proving damages through testimony, written affidavit, or other relevant evidence. Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc., 389 F.Supp.2d 1222, 1225-26 (N.D. Cal. 2005).  To support its motion for default judgment, plaintiff has submitted evidence that the defendants are not minors, incompetent, or currently serving in the military.[3]

By their default, defendants are deemed to have admitted the well-pleaded averments of the complaint except those as to the amount of damages. Fed. R. Civ. P. 8(d); Bd. of Trs. of

---

[3]    A court may not enter a default judgment against an unrepresented minor, an incompetent person, or a person in military service.  Fed. R. Civ. P. 55(b)(2); 50 U.S.C. App. § 521.  Defendant International Marine, as a corporation, is not subject to these limitations.  Regarding defendant Falche, plaintiff's counsel submits that Falche is a competent adult and is not known to be engaged in military service, but rather works and resides within this judicial district. Docket No. 21, n. 3.

1  the Boilermaker Vacation Trust, 389 F.Supp.2d at 1224.

2  Plaintiff's pleadings have therefore sufficiently alleged

3  facts to support a breach of contract claim.[4]  For this

4  breach, plaintiff seeks damages and has moved for an entry of

5  default judgment.

6       In its Motion for Entry of Default Judgment and Award of

7  Attorneys' Fees, plaintiff seeks damages totaling $775,570.60

8  as a result of defendants' breach of contract. Docket No. 21.

9  This includes $737,316.33 for breach of the promissory note

10  and personal guarantee and $38,254.27 for fuel deliveries that

11  occurred in 2006 and 2007. Id.  Plaintiff also seeks interest

12  on the unpaid principal of the promissory note and prejudgment

13  interest on its claim for unpaid fuel deliveries. Id.

14  Furthermore, plaintiff seeks attorneys' fees and costs of

15  collection associated with this litigation in the amount of

16  $35,551.77. Id.  In Texas, the appropriate amount of damages

17  for breach of contract is "that which restores the injured

18  party to the economic position he would have enjoyed if the

19  contract had been performed." Mood v. Kronos Products Inc.,

20  245 S.W.3d 8, 13 (Tex. App. Dallas 2007).  Plaintiff has

21  submitted a copy of the original sales contract (Rack Terms

22  and Conditions), the personal guarantee signed by Falche, the

23

24       [4]   The essential elements for a breach of contract claim
     in Texas are that a valid contract existed, plaintiff
25   performed, defendant breached, and plaintiff suffered resulting
     damages. Bank of Tex. v. VR Elec., 276 S.W.3d 671, 677 (Tex.
26   App. Houston 2008).
          Pursuant to the parties' choice of law provisions,
27   the Rack Terms and Conditions, personal guarantee, and
     promissory note are governed by the laws of the State of Texas.
28   FAC Exh. A at § 9; FAC Exh. B; FAC Exh. C at § 12(a).

1   promissory note, and invoices for the 2006-2007 unpaid fuel

2   shipments to prove damages. FAC Exh. A; FAC Exh. B; FAC Exh.

3   C.; FAC Exh. F.  Plaintiff is entitled to $775,570.60[5] because

4   defendants breached the payment terms of the Rack Terms and

5   Conditions, personal guarantee, and promissory note.

6       In addition, plaintiff may claim interest on the unpaid

7   principal balance stated in the promissory note, $737,316.33.

8   Docket No. 21.  When a contract specifies a rate of interest

9   as a damage, the courts will award that rate of interest,

10  subject only to usury limitations. Bair Chase Property Co.,

11  LLC v. S & K Development Co., Inc., 269 S.W.3d 133, 138-40

12  (Tex. App. Austin 2008); Tex. Fin. Code §§ 302.001(b),

13  304.103, 304.002.  Based on the promissory note, plaintiff may

14  claim interest at the rate of 6.25 percent.[6]  Thus, plaintiff

15  is entitled to $53,354.58 as interest on the unpaid balance of

16  the promissory note.

17      Plaintiff also seeks statutory prejudgment interest on

18  its claim for $38,254.27 for fuel deliveries made during 2006

19  and 2007. Docket No. 5.  Awards of prejudgment interest in

21  [5]   As mentioned *supra*, this includes $737,316.33 for
breach of the promissory note and personal guarantee and
22  $38,254.27 for unpaid fuel deliveries made under the Rack Terms
and Conditions.

24  [6]   The promissory note allows for an interest rate of
prime plus three to five points per annum upon an event of
default. FAC Exh. C at § 6.  Plaintiff has calculated an
25  interest rate at the minimum allowed for under the Rack Terms
and Conditions (prime plus three points).  The prime rate is
26  currently 3.25 percent. Bd. of Governors of the Fed. Reserve
Sys., *Selected Interest Rates (Weekly)*,
27  http://www.federalreserve.gov/releases/h15/Current/ (last
visited Oct. 20, 2010). Accordingly, plaintiff is awarded
28  interest at the rate of 6.25 percent.

1   diversity cases are governed by state law where the

2   substantive claim does not derive solely from federal law. <u>Oak</u>

3   <u>Harbor Freight Lines, Inc. v. Sears Roebuck, & Co.</u>, 531 F.3d

4   949, 961 (9th Cir. 2008).  Plaintiff made these deliveries

5   pursuant to the Rack Terms and Conditions.  Thus, they are

6   expressly governed by Texas law as stated in the choice of law

7   provision. FAC Ex. A at § 9.  In Texas, prejudgment interest

8   is "available as a matter of right where an ascertainable sum

9   of money is determined to have been due and payable at a date

10  certain prior to judgment." <u>West Beach Marine v. Erdeljac</u>, 94

11  S.W.3d 248, 266 (Tex. App. Austin 2002) (citing <u>Republic Nat'l</u>

12  <u>Bank v. Northwest Nat'l Bank</u>, 578 S.W.2d 109, 116 (Tex.

13  1979)).  In the present case, prejudgment interest has been

14  set at a rate of five percent.[7]  Thus, plaintiff is entitled

15  to statutory prejudgment interest of $1312.32 for amounts owed

16  on unpaid fuel shipments.

17      Plaintiff also seeks an award of attorneys' fees

18  associated with this litigation in the amount of $34,271.80.

19  Plaintiff may claim attorneys' fees under provisions of the

20  _____

21      [7]    Texas statute provides that prejudgment interest
    accrues at the same rate as postjudgment interest awarded for
22  breach of contract, and, when not specified, is determined by
    the Texas Consumer Credit Commissioner. Tex. Fin. Code Ann. §§
23  304.104, 304.003(b).  The current rate for prejudgement
    interest has been set at five percent. Tex. Office of the
24  Consumer Credit Comm'r, *Interest Rates*,
    http://www.occc.state.tx.us/pages/int_rates/Index.html (last
25  visited Oct. 20, 2010). "Prejudgment interest accrues on the
    amount of a judgment during the period beginning on the earlier
26  of the 180th day after the date the defendant receives written
    notice of a claim or the day the suit is filed and ending on
27  the day preceding the date judgment is rendered … [It] is
    computed as simple interest and does not compound." Tex. Fin.
28  Code Ann. § 304.104.

1    contracts because defendants have expressly consented to

2    reimburse fees related to litigation. FAC Exhs. B, C at §9.

3    In addition, Texas law authorizes awards for plaintiff's

4    reasonable attorneys' fees in contract disputes. Tex. Civ.

5    Prac. & Rem. Code § 38.001.  To calculate reasonable

6    attorneys' fees, the court should calculate the lodestar

7    amount by "multiply[ing] the reasonable number of hours worked

8    by a reasonable hourly rate." Bates v. Randall County, 297

9    S.W.3d 828, 838 (Tex. App. Amarillo 2009).  Plaintiff claims

10   attorneys' fees of $23,826.00 from outside counsel and

11   $10,445.80 from in-house counsel. Docket No. 21.  In support

12   of its request for attorneys' fees, plaintiff has submitted

13   billing statements from outside counsel and in-house counsel,

14   including services provided by paralegals.[8] Docket Nos. 22,

15   25.  Plaintiff's outside counsel declares that rates charged

16   by his firm were below lawyers of comparable skill and

17   experience in the Bay Area.[9] Docket No. 22 ¶ 12.  Plaintiff's

18   outside counsel also declares that the hours expended by his

19

20

21   _____

22        [8]    The term "attorneys' fees" includes fees charged for
     paralegal services may be charged at "market rate". Richlin
23   Sec. Service Co. v. Chertoff, 533 U.S. 571, 571 (2008).
     However, paralegal fees are only recoverable to the extent that
24   they are for work traditionally done by an attorney and not
     administrative or ministerial tasks. All Seasons Window and
     Door Mfg., Inc. v. Red Dot Corp., 181 S.W.3d 490, 504 (Tex.
25   App. Texarkana 2005).

26        [9]    Plaintiff's outside counsel billed $310.00 per hour
     in 2009 and $330.00 in 2010. In addition, associates working on
27   this case were billed at $210.00 per hour in 2009 and $225.00
     in 2010, and paralegals were billed at $120.00 per hour. Docket
28   No. 22 ¶¶ 7, 9, 10.

firm were necessary to the litigation of this case.[10] Docket
No. 22 ¶ 11. Having reviewed the declarations provided by
plaintiff's outside counsel, I am satisfied that their hourly
rates and hours charged for work performed are reasonable for
this case and their level of experience.

Plaintiff's in-house counsel declares that the hours
expended by plaintiff's legal department were necessary for
the collection of amounts due and the subsequent litigation of
this case. Docket No. 25.  Texas law permits the award of fees
generated from in-house counsel by using the "market value
method" but not the "cost-plus method."[11] AMX Enterprises,
L.L.P. v. Master Realty Corp., 283 S.W.3d 506, 519 (Tex. App.
Fort Worth 2009).  Plaintiff's in-house counsel seeks hourly
fees in the form of a variable rate calculated from the actual
cost and overhead of his department's legal services.[12] As
explained above, this method of calculating in-house legal
fees is not allowed under Texas law, but must be determined by

---

[10]    As shown in plaintiff's outside counsel's billing
statements, the bulk of time was spent in research, client
communication, and preparation of the complaint and amended
complaint, approximately 45 hours. The remainder of the hours
billed were for research; client communication; drafting the
motion for default, approximately 12 hours; and drafting the
motion for default judgment, approximately 20 hours.

[11]    "Market value" refers to the customary rates charged
in the locality for similar legal services. AMX Enterprises,
L.L.P., 283 S.W.3d at 519.  "Cost-plus method" refers to rates
determined by claimant's actual cost of employing in-house
counsel. Id. at 517.

[12]    Plaintiff's in-house counsel has submitted billing at
a variable hourly rate. Docket No. 25.  This rate was
calculated and dependent on his department's internal budget
and overhead. Id.  The rates charged were at an average of
$430.00 per hour for attorneys and $160.00 per hour for
paralegals.

1   using the "market value" approach. Furthermore, plaintiff's
2   outside counsel does not provide any reason or justification
3   for fees that are substantially higher than those of
4   plaintiff's outside counsel. Accordingly, I am not satisfied
5   that hourly rates submitted by plaintiff's in-house counsel
6   are reasonable. In-house counsel also fails to submit detailed
7   descriptions of their work on this case.[13]  Based on these two
8   reasons, I do not recommend awarding fees for in-house work.

9       Finally, plaintiff claims additional costs and expenses
10  associated with this litigation in the amount of $1,279.97.
11  Under the personal guarantee and promissory note, defendants
12  have expressly consented to reimburse plaintiff for costs
13  related to litigation and collection. FAC Exhs. B, C at §9.
14  In support of this claim, plaintiff has submitted billing and
15  receipts for associated costs. Docket Nos. 22, 25. I am
16  satisfied that these costs are reasonable.

17      For the foregoing reasons, I recommend that Judgment be
18  entered in plaintiff's favor against defendants International
19  Marine Fuels Group, INC. and Robert Falche, joint and
20  severally, for $854,343.47.  This amount includes $737,316.33
21  for breach of the promissory note and personal guarantee and
22  $52,354.58 in interest due on that amount.  It also includes
23  $38,254.27 for fuel deliveries that occurred in 2006 and 2007
24  and $1,312.32 in interest due on that amount.  Finally, it

25

26      [13]   Plaintiff's in-house counsel declares that
    plaintiff's legal department spent 33.25 hours on this matter,
27  including 9 hours of paralegal services and 24.25 hours of
    attorney services, but does not specify how these hours were
28  spent. Docket No. 25.

1  includes $23,826.00 for fees generated by outside counsel and

2  $1,279.97 for associated costs of collection and litigation.

3  Dated: October 20, 2010

4

Bernard Zimmerman

5  United States Magistrate Judge

6  G:\BZALL\-BZCASES\CONOCOPHILLIPS V. MARINE FUELS\REPORT AND
   RECOMMENDATION.wpd

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28